**IT IS ORDERED as set forth below:**



**Date: August 1, 2017**

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 14-65320-WLH |
| ROCKY RENE WHITE, | : | |
| Debtor. | : | |
| | : | |
| JASON PETTIE, as Chapter 7 Trustee For the Estate of Rocky Rene White, | : | |
| Plaintiff, | : | ADVERSARY PROCEEDING NO. 15-05421-WLH |
| v. | : | |
| KEVIN RINGO and SHECHEM INDUSTRIES, INC., | : | |
| Defendants. | : | |

**ORDER ON DEFENDANT KEVIN RINGO'S RENEWED
MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Kevin Ringo's Renewed Motion for Summary Judgment and Brief in Support ("Renewed Motion") (Docket Nos. 108 & 109). The

1

Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Plaintiff and Defendant Kevin Ringo have admitted this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

## **FACTS**

The facts in this case have been set out in this Court's prior Order on Defendant Kevin Ringo's Motion for Summary Judgment (Docket No. 89) ("Summary Judgment Order"), Order Granting Shechem's Motion for Summary Judgment (Docket No. 86), and Order After Trial on Complaint to Bar Discharge under 11 U.S.C. § 727 (Case No. 14-5331, Docket No. 204) ("Trial Order"). They will not be restated here. The Complaint at issue alleges that the transfer of Debtor's business interest to Kevin Ringo ("Ringo") was in violation of the Georgia Uniform Fraudulent Transfers Act ("UFTA")[1], which the Plaintiff asserts pursuant to 11 U.S.C. § 544.

Ringo filed a motion on July 28, 2016 seeking summary judgment on Counts 1, 2 and 3 of the Complaint, which are claims for actual and constructive fraud under O.C.G.A. §§ 18-2-74(a)(1), (a)(2)(B), 18-2-75 and 11 U.S.C. § 544 (Docket No. 60) ("Summary Judgment Motion"). On November 2, 2016, the Court entered an order denying the Summary Judgment Motion, finding factual disputes existed as to, *inter alia*: (1) the value of the interest transferred by Debtor to Ringo, (2) the value received by Debtor in exchange for the transfer, (3) whether Debtor knew or should have known he was incurring debt beyond his ability to pay, (4) whether Debtor was insolvent, and (5) whether there were sufficient "badges of fraud", as defined in section 18-2-75, for a finding of actual fraud ("Summary Judgment Order").

After issuance of the Summary Judgment Order, the Court held a trial in a related proceeding, White v. White, Adversary Proceeding No. 14-05331, which adjudicated an

---

[1] Effective July 1, 2015, the Act's name was changed to the Uniform Voidable Transactions Act. The amendments which became effective July 1, 2015 do not affect this opinion, as they only apply to transfers made or obligations incurred on or after July 1, 2015. See Callaway Blue Springs, LLLP v. West Basin Capital, LLC, 2017 WL 2417779, at *4 (Ga. Ct. App. June 5, 2017).

2

objection to Debtor's discharge ("Discharge Trial"). Ringo has now filed the Renewed Motion, arguing that facts the Court considered disputed in the Summary Judgment Order have been resolved by virtue of the Trial Order and testimony presented at the Discharge Trial. Plaintiff filed a response on June 27, 2017.

The Statement of Undisputed Facts presented by Ringo with the Renewed Motion is identical to the statement presented with the Summary Judgment Motion, with the addition of a few citations to trial testimony in support of factual assertions that were previously considered. No trial transcript has been submitted with the Renewed Motion, however, as required by BLR 7056 and Fed. R. Bankr. P. 7056, incorporating Fed. R. Civ. P. 56.

## ANALYSIS

### I.  *Summary Judgment*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056(c). "The substantive law [applicable to the case] will identify which facts are material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden of proving there are no disputes as to any material facts. Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 918 (11th Cir. 1993). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The party moving for summary judgment has "the initial responsibility of informing the…court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if

any' which it believes demonstrate the absence of a genuine issue of material fact." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (citing Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2553).  What is required of the moving party, however, varies depending on whether the moving party has the ultimate burden of proof on the issue at trial.

> When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim' (cites omitted) in order to discharge this 'initial responsibility'. Instead, the moving party simply may 'show—that is, point out to the…court—that there is an absence of evidence to support the nonmoving party's case. (cites omitted). Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial.

Four Parcels of Real Prop., 941 F.2d at 1437 (citing Celotex, 477 U.S. at 323-31, 106 S.Ct. at 2553-57).  Once this burden is met, the nonmoving party cannot merely rely on allegations or denials in its own pleadings.  Fed. R. Civ. P. 56(e).  Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts.  Hairston, 9 F.3d at 918.  When reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the nonmoving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party.  Id.

## II.   *Constructive Fraud under O.C.G.A. § 18-2-74(a)(2) & 11 U.S.C. § 544*

Count 2 of the Complaint seeks a finding that the transfer of Debtor's interest in NJUN-NJUN constitutes a constructively fraudulent transfer under O.C.G.A. § 18-2-74(a)(2).  Section 18-2-74(a)(2) makes voidable any transfer where the debtor received less than a reasonably equivalent value in exchange for the transfer and the debtor intended to incur, or reasonably believed that he or she would incur, debts beyond his or her ability to pay as they became due.  Renasant Bank, Inc. v. Smithgall, 2016 WL 4502374, at *2 (N.D. Ga. June 13, 2016).  "In order to determine if a debtor received reasonably equivalent value, the court must look at what value

4

the debtor received in return for the transfer. The court must then determine whether the value received is reasonably equivalent; this will depend on the facts of each case." Kipperman v. Onex Corp., 411 B.R. 805, 828-29, 837 (N.D. Ga. 2009) (discussing the standard for constructive fraud under 11 U.S.C. § 548 and O.C.G.A. §§ 18-2-74(a)(2) and 18-2-75). The relevant date for determining whether reasonably equivalent value was received is the date of the transaction. Id. at 837 (citing In re Joy Recovery Tech. Corp., 286 B.R. 54, 75 (Bankr. N.D. Ill. 2002)).

In the Summary Judgment Motion, Ringo argued the consideration given for Debtor's interest in NJUN-NJUN was his agreement to manage the NJUN entities. He argues this was sufficient because the value of the NJUN-NJUN interest was low due to the large debt burden being carried by the NJUN entities and the lack of contracts for the manufacture or installation of any NJUN systems. Based on evidence in the record, including evidence disputing the date of the transfer and suggesting the companies had reduced their debt load and entered into contracts, the Court held that a dispute existed as to both the value received by Debtor and the value of the interest transferred.[2]

Ringo's arguments in the Renewed Motion are largely unchanged, and he provides no new evidence or otherwise shows how the trial testimony and evidence cited controverts the evidence considered in the Summary Judgment Order. The evidence put forth by Ringo includes testimony showing the NJUN companies were in distress (and therefore Debtor's interest was negligible), testimony regarding the consideration included in Ringo's management of the companies (including office space, employees and oversight), testimony that Ringo attempted and ultimately succeeded in helping the companies retire debt and secure contracts for the NJUN

---

[2] The Court also found a dispute existed as to whether Debtor knew or should have known he was incurring debt beyond his ability to pay. Ringo did not address this element, and therefore the Court's finding from the Summary Judgment Order stands.

5

system, and testimony that in hindsight the company had no value. All of these facts were considered in the prior order, or add nothing to resolve disputes about the value. Plaintiff in his Response points to trial testimony regarding the amount paid by NJUN for Ringo's management services, further disputing the value of the management services to Debtor. Furthermore, in addressing the value of the NJUN-NJUN interest in the Trial Order, the Court recognized the issue was critical to the determination of whether Debtor received reasonably equivalent value, which is central to the outcome of this adversary proceeding. For that reason, the Court declined to make any finding as to the value of the NJUN-NJUN interest in the context of Debtor's Discharge Trial. See Trial Order, pp. 27 n.8, 32.[3] The Court finds the facts related to Plaintiff's claims under section 18-2-74(a)(2) remain in dispute, and therefore summary judgment on Count 2 is not appropriate at this time.

III.    *Actual Fraud under O.C.G.A. § 18-2-74(a)(1) and 11 U.S.C. § 544*

Count 1 of the Complaint seeks a finding of actual fraud under O.C.G.A. § 18-2-74(a)(1). Section 18-2-74(a)(1) prohibits transfers made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor…." O.C.G.A. § 18-2-74(a)(1). To determine whether a debtor acted with actual intent, "consideration is given to an open-ended set of factors listed in O.C.G.A. § 18-2-74(b), which are commonly called the 'badges of fraud.'" Bloom v. Camp, 336 Ga. App. 891, 894 (2016) (citing RES-GA Hightower, LLC v. Golshani, 334 Ga. App. 176, 178(1)(a) (2015)). The badges of fraud include:

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer was disclosed or concealed;
> (4) Before the transfer was made the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;

---

[3] Ringo includes a footnote on page 2 of the Renewed Motion arguing certain trial testimony supports his prior assertion that the transfer of Debtor's interest in NJUN-NJUN occurred in 2009. The date of the transfer was a key disputed fact related to the value of Debtor's interest in the Summary Judgment Order. However, the Court made clear in the Trial Order that it was not determining the date of the transfer. See Trial Order, p. 27 n.8.

6

>(6) The debtor absconded;
>(7) The debtor removed or concealed assets;
>(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;
>(9) The debtor was insolvent or became insolvent shortly after the transfer was made;
>(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

O.C.G.A. § 18-2-72(b)(1)-(12). The list is meant to be "a nonexclusive catalogue of factors appropriate for consideration by the court in determining whether the debtor had actual intent to hinder, delay, or defraud one or more creditors." Unif. Fraudulent Transfer Act § 4 cmt. 5, 7A ULA 654 (2004). Courts consider the totality of the circumstances, using the factors as "relevant evidence as to the debtor's actual intent from which the finder of fact may draw an inference of actual intent to defraud." Bishop v. Patton, 288 Ga. 600, 608 (2011) (citation omitted).

In the Summary Judgment Motion, Ringo argued that the only badge of fraud implicated was the potential for Ringo to be considered an insider, and that no other evidence existed to show intent to hinder, delay or defraud creditors. The Court found sufficient evidence existed to create a dispute as to whether Debtor still retained control of his interest in NJUN-NJUN, whether the transfer was concealed, whether the Debtor was insolvent at the time of the transfer or rendered insolvent by the transfer, and whether the Debtor received reasonably equivalent value. Ringo pointed the Court to testimony at the Discharge Trial he believes resolves each disputed badge.

**Retention of Control**

In the Summary Judgment Order, the Court found that a dispute existed as to Debtor's retention of the transferred interest based on evidence that Debtor was listed as a partner on certain account summaries and Debtor continued to attend and direct meetings after the transfer. Ringo argues that the trial testimony of Gary Epp, Joe Forrester and Ringo all indicate that Ringo

had control of the companies and that Debtor's role was not as a director. Ringo is correct that the trial testimony supports his position, and the Court found the testimony cited to be credible. See Trial Order, p. 27-28. Furthermore, the Trial Order found Debtor's designation as "partner" on account statements was not based on any legal determination, and that Debtor's participation in meetings after the transfer were limited to technical development of the NJUN system. See Trial Order, p. 28-30. The Court therefore found that Debtor did not retain an ownership interest in NJUN-NJUN after the transfer. Accordingly, the disputed facts related to this badge of fraud have been resolved.

**Concealment of Transfer**

In the Summary Judgment Order, the Court found affidavit testimony from Robbie and Phyllis White stating that the transfer was concealed was sufficient to create a dispute of fact. Ringo argues Robbie White testified at trial that one of the loans he provided to Debtor was made after Debtor transferred his interest in the company to Ringo, and therefore he had to know about the transfer of Debtor's interest. After review of the testimony in question, however, the Court cannot state the testimony would preclude a finding that Debtor concealed the transfer from his creditors. When asked at trial whether he loaned Debtor money, Robbie White stated that he provided a loan after Debtor "lost control of the company". Mr. White then paused for a considerable amount of time before remarking to the Court that he needed to think. When he continued his testimony he did not address the time period during which the loan was made. The Court made no finding as to when Robbie or Phyllis White learned of Debtor's transfer. The Court notes further that the loan from Robbie White was initially made in 2001. It is, therefore, entirely possible Debtor concealed the transfer from Robbie and Phyllis White for a period of time while they were creditors. The Court cannot find at this stage that the transfer to Ringo was not concealed.

8

**Solvency of Debtor**

In the Summary Judgment Order, the Court found Debtor's solvency remained in dispute largely because the date of the transfer remained in dispute. Ringo argues the Court made a finding in the Trial Order that Debtor was neither insolvent at the time of the transfer nor became insolvent because of it based on Debtor's income for contract labor and patents after the transfer to Ringo. As an initial matter, the Court notes that the Trial Order made no affirmative finding as to the Debtor's solvency. Second, Ringo's argument mischaracterizes the Court's finding with respect to Debtor's income in 2010, 2011 and 2012. The Trial Order clarifies that while Debtor received substantial funds during those years from NJUN, his reported income was significantly lower; the difference between the amount received by Debtor and Debtor's reported income was because the disbursements to Debtor also served to reimburse Debtor for expenses and materials he purchased on the company's behalf. See Trial Order, p. 12. The Trial Order did not address the liability side of Debtor's balance sheet and reached no conclusion on solvency. Finally, as mentioned in the Summary Judgment Order, Debtor's solvency depends largely on the value of the interest transferred, which in turn depends in part on the date of the transfer. Neither the value of the interest nor the date of the transfer were resolved in the Trial Order and remain in dispute. See Trial Order, pp. 27 n.8, 32. The Court therefore concludes Debtor's solvency remains disputed.

**Reasonably Equivalent Value**

Ringo's arguments regarding reasonably equivalent value under Section 18-2-74(a)(1) are the same as those presented in connection with his arguments under Section 18-2-74(a)(2) discussed above. The Court previously found sufficient evidence in the record to establish a dispute as to the value of the interest transferred and the value received by Debtor in exchange for the transfer, and nothing presented by Ringo in the Renewed Motion controverts any

9

evidence previously considered. Ringo's reliance on the Trial Order for resolution of this point is puzzling. To support the proposition that Ringo gave sufficient consideration for the NJUN-NJUN interest, he cites to the Trial Order for a factual finding that the only funds generated by sales and installations of the NJUN system occurred after Ringo took control of the companies. This is a true and accurate reflection of the Trial Order's text:

> The only funds that came into the company in 2009 and 2010 came as a result of Mr. Ringo's transactions with Shechem [an outside investor].

Trial Order, p. 31-32. However, it is surprising that Ringo would cite such language, as **the very next sentence** reads:

> Plaintiffs' real argument is that the stock transferred had value, contrary to the Debtor's testimony. But whether the transfer was for sufficient consideration is at the heart of the adversary proceeding pending against Mr. Ringo. The Court will not effectively rule on the heart of the related fraudulent conveyance action in the context of this Section 727 action.

Trial Order, p. 32. It is clear that the question of reasonably equivalent value has not been resolved; no further analysis of this point is necessary.

The Court finds that Ringo is correct regarding Debtor relinquishing his interest in NJUN-NJUN after the transfer. The evidence relied on in the Summary Judgment Order was considered during the Discharge Trial and the Court ruled that the evidence did not prove that Debtor retained a controlling interest in the company after the transfer. Nonetheless, summary judgment on this point is still not appropriate. The Court finds the remaining disputes as to Debtor's solvency and whether reasonably equivalent value was given outweigh the finding that Debtor did not retain control over his interest following the transfer. Accordingly, the Court declines to grant summary judgment on Count 1.

IV.      *Fraudulent Transfer under O.C.G.A. § 18-2-75 and 11 U.S.C. § 544*

Ringo also renews his motion on Count 3 of the Complaint, which alleges that the transfer from Debtor to Ringo of Debtor's NJUN-NJUN interest is avoidable under O.C.G.A. § 18-2-75. Section 18-2-75 provides that a transfer will be voidable as to a creditor whose claim arose before the transfer where "the debtor made the transfer…without receiving reasonably equivalent value in exchange for the transfer…and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer…." O.C.G.A. § 18-2-75(a). The Court held in the Summary Judgment Order that disputes existed as to Debtor's solvency at the time of the transfer or as a result thereof and as to whether Debtor received reasonably equivalent value for the transfer of his interest in NJUN-NJUN. As established in the previous sections, those disputes still exist. The evidence previously considered was not controverted by any evidence or testimony cited by Ringo, which was the same as the evidence cited for these issues in the previous sections. Accordingly, further analysis of this section is unnecessary, and summary judgment on Count 3 remains inappropriate.

V.      *Good Faith Defense under O.C.G.A. § 18-2-78(a)*

Lastly, Ringo renews the good faith defense raised in the Summary Judgment Motion. The Georgia UFTA provides a defense to transfers that would otherwise be voidable under O.C.G.A. § 18-2-74(a)(1) where the transferee "took in good faith and for a reasonably equivalent value…." O.C.G.A. § 18-2-78(a). In the Summary Judgment Order, the Court ruled that summary judgment was not warranted on this defense because the question of whether Debtor received reasonably equivalent value remained in dispute. Once again, this issue has not been resolved. Therefore, summary judgment on Ringo's defense is not appropriate.

11

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Ringo's Renewed Motion is **DENIED.** Pursuant to the Order After Status Conference entered May 5, 2017 (Docket No. 100), the parties will present a pretrial order to the Court 30 days following entry of this Order.

### END OF DOCUMENT

### DISTRIBUTION LIST

Terrence Shannon
Terrence Shannon, P.C.
PO Box 91
Porterdale, GA 30070

Robert Jackson Wilson
Robert Jackson Wilson, P.C.
10 Lumpkin Street
Lawrenceville, GA 30046